SAMUEL LEVY ET AL., APPELLANTS, v. JAMES RILEY, ADMINISTRATOR, ET AL., RESPONDENTS.

ADMINISTRATOR—AUTHORITY REVOKED, WHEN. — When an administrator is ordered to file a new undertaking, and fails to comply with said order, thenceforward his authority shall cease, and he shall be deemed removed and his letters revoked.

PURCHASER AT SALE OF DISQUALIFIED ADMINISTRATOR.—One who purchases land at a sale by an administrator who has been thus disqualified, with-out knowledge of his disqualification, will be entitled to relief in equity.

APPEAL—RIGHT OF BY PURCHASER AT ADMINISTRATOR'S SALE.—A purchaser under an order of the County Court to sell land of a decedent, has no right of appeal from such order, although it should be obtained by an improper party, unless such purchaser should be (an heir or devisee of such de-cedent) a party required by statute to be made a party to such proceed-ing; neither has such purchaser any right of appeal under the statute from an order of confirmation of such sale.

APPEAL from Linn County.

The facts are stated in the opinion of the Court.

*Dolph, Bronaugh, Dolph & Simon,* for Appellants.

*S. A. Johns and R. S. Strahan,* for Respondents.

By the Court, PRIM, J.:

This was a suit in equity to enjoin respondents as administrator and administratrix of the estate of Eli B. Moore, deceased, from paying out to the creditors of said estate or otherwise disposing of certain money received by them from appellants; also from transferring a certain promissory note received by them for the purchase-price of certain real estate sold by respondents to appellants by virtue of an order of the County Court of Linn County authorizing such sale.

Respondents demurred to the complaint upon the ground that it did not contain facts sufficient to constitute a cause of suit, and the demurrer was sustained and a decree entered against appellants for cost of suit, etc.

The complaint alleges that on July 26, 1871, respondents were appointed administrators of said estate, and gave an undertaking for the faithful performance of their said trust as such in the sum of ten thousand dollars. On filing an inventory of the property of the estate it appeared that the real estate was of the value of eight thousand eight hundred and eighty-six dollars and fifty cents, and the personal property of the value of twelve thousand nine hundred and twelve dollars and nine cents. On April 25, 1872, an order was made by said County Court declaring the undertaking of said administrators to be insufficient, and requiring them to give a new one in the sum of twenty thousand dollars, to be approved by the County Judge, and that it be filed within twenty days from the date of said order.

That said respondents wholly failed to comply with said order, whereby their official position became vacated and their letters revoked, as provided by statute in such cases. Afterwards, to wit, on December 4, 1872, respondents, still pretending to be administrators of said estate, procured of the County Court an order authorizing them as administrators of said estate to sell certain real property belonging

thereto and described in the complaint. Said property was accordingly advertised and sold by respondents to appellants; said appellants not knowing at the time of said sale that respondents had forfeited their appointment as administrators, but supposing them to have authority to act in such capacity, became the purchasers of said property at said sale. The purchase-price of said property was two thousand and fifteen dollars, gold coin; one-half to be paid down and a note to be executed for the other half. After the sale, and prior to the confirmation thereof by the County Court, appellants, having discovered the want of authority or official capacity in respondents to make said sale, appeared by attorney before said Court and remonstrated against the confirmation of said sale; but the Court, disregarding said remonstrance, ordered said sale to be confirmed.

The respondents, having demurred to the complaint, all the facts properly pleaded are to be taken as true, as therein stated.

Adopting this rule, it is admitted as true that respondents were not in fact administrators of said estate at any time during the pendency of the proceeding in the County Court to sell the land in question.

Section 1065 of the Code provides that " when a new undertaking is ordered, if the executor or administrator fail to comply therewith within five days from the entry thereof, or within such further time as the order may prescribe, thenceforward the authority of such executor or administrator shall cease, and he shall be deemed removed and his letters revoked."

Under our statute no one can sell or dispose of the property belonging to an estate of a decedent, except an executor or administrator duly appointed to perform the duties of such trust. And no sale, made by an executor or administrator, is valid unless such sale is authorized by an order of the County Court, or Judge thereof, except when a will is made by the decedent, in which provision is made authorizing the sale of certain property without such order. (Civ. Code, § 1109.)

The real property of an estate can only be sold by an administrator when it appears that the personal assets have been exhausted, and that the charges, expenses and claims, specified in § 1110, have not been satisfied. (Civ. Code, § 1113.) Under the statute no one is authorized to make the application for such sale, or make the sale when ordered, except the administrator or executor of the estate. In this proceeding it appears that the heirs of decedent were cited, and everything appears to have been regular except that the respondents, who commenced and conducted the proceeding, were not at the time administrators of the estate.

And we are here called upon to determine what was the effect of the sale made by respondents; or rather, whether appellants acquired any title to the land in question under such sale.

It is claimed by respondents, that the Court, having obtained jurisdiction of the subject-matter, by the filing of the petition of respondents, as administrators, and by the citation of the heirs, interested in the estate, that the sale is not void, but merely voidable. It is claimed, however, by appellants, that it is an absolute nullity, because made by parties who, under the law, had no right whatever to move in the matter.

In *Griffith* v. *Frazier* (8 Cranch, 9) it was held that " a judgment rendered against one *as administrator* who is *not such* is *void,* and the levy of an execution, issuing on such judgment, passes *no title* to the property levied on." The difference between that case and the one here is, that judgment was rendered in that case against a party as an administrator who was not such, while here a judgment, or an order of sale, was obtained by certain parties, as administrators, who, in fact, were not such at the time. In that case Joseph Salvadore was seized of lands in which trespass was alleged to have been committed and departed this life, having first made his last will, in writing, in which he appointed Joseph Decosta one of his executors, who made probate of the will and duly entered upon his trust. A few years afterwards he left the State of South Carolina and

resided in the State of Georgia. Letters of administration *de bonis non* were then granted to James Lamotte. Prior to the death of the decedent a judgment had been rendered against him which was revived against Lamotte as the administrator of Salvadore. Execution was issued on the judgment, and the lands of Salvadore were sold under it and conveyed by the Sheriff to a party under whom the plaintiff claimed title. The Circuit Court instructed the jury that "the letters of administration granted to Lamotte were totally void; that therefore the judgment of Bourdoux was not revived against the estate of Salvadore; that the sale and conveyance, by the Sheriff, passed no title to the purchaser." Mr. Chief Justice Marshall, in delivering the opinion of the Court, said: "The sole defect alleged in the title of the plaintiff being in that part of it which depends on the sale and conveyance of the Sheriff to Peter Freneau, the validity of the sale is the principal if not the only question in the cause.

"By the plaintiff it is contended that the letters of administration constituted Lamotte an administrator *de facto*, and rendered his acts valid, so far as third persons are interested, and exempted them from question where they can be examined only incidentally.

"By the defendant it is contended that they were granted by a person having no jurisdiction in the case, and are therefore an absolute nullity; that Lamotte was not *de facto* the administrator of Salvadore, and that his acts as such administrator stand on no better or higher ground than the acts of any other person who should assume that character. * * To give the ordinary jurisdiction, a case in which, by law, letters of administration may issue, must be brought before him. In the common case of intestacy it is clear that letters of administration must be granted to some person, * * * and though they should be granted to one not entitled by law, still the act is binding until annulled by the competent authority, because he had power to grant letters of administration in the case. * * * But suppose administration to be granted on the estate of a person not really dead. The act, all will admit, is totally void. Yet

the ordinary must always inquire and decide whether the person whose estate is to be committed to the care of others be dead or in life. It is a branch of every cause in which letters of administration issue. Yet the decision of the ordinary that the person on whose estate he acts is dead, if the fact be otherwise, does not invest the person he may appoint with the character or powers of an administrator. The case in truth was not one within his jurisdiction. It was not one in which he had a right to deliberate. It was not committed to him by law." Again he says: "Suppose administration to be granted on the estate of a deceased person whose executor is present in the constant performance of his executional duties. Is such an appointment void, or is it only voidable? In the opinion of the Court it would be an absolute nullity."

To apply the doctrine laid down by Mr. Chief Justice Marshall to this case, we will suppose a person as administrator, who in fact is not such, should apply to the Court and obtain an order to sell the land of a person not really dead, would a sale made in pursuance of such order be void or only voidable? It would be admitted by every one, we presume, that such a sale would be an absolute nullity. But, again, suppose the party should be really dead, and an administrator should be duly appointed by the proper authority to administer upon the estate of such decedent, and while such administrator should be duly engaged in discharging the duties of such trust, suppose another person as administrator, who in fact is not such, should apply to the County Court and obtain an order to sell the land of such decedent, would a sale made under such an order be void or only voidable? It appears to us such a sale would also be an absolute nullity, because the law does not authorize or permit any one except the administrator or executor to apply for such orders or to make such sales. But in this case we are not driven to the necessity of holding the sale in question to be an absolute nullity in order to warrant the Court in granting the relief demanded.

Here the sale is not attacked collaterally, but directly by an original bill, upon the ground that the order was ob-

tained and the sale made by respondents as administrators, who in fact were not such; consequently it is immaterial whether the sale was void or only voidable; the validity of such sale is at least doubtful, and to such an extent as to operate as a cloud upon the title of appellants to the land. And there can be no doubt but that a Court of equity should exercise its equitable powers in removing the cloud from the title, or in compelling the respondents to refund the purchase-money.

But it is insisted that "appellants' remedy, if any they had, was by appeal from the order of the County Court confirming the sale." This position, we think, is not tenable. The first part of § 1134 provides that "the order of confirmation of sale in this title mentioned is conclusive as to the regularity of the sale and no further." Section 1119 provides that "at the term of Court next following the sale of real property, the executor or administrator shall make a return of his proceedings concerning such sale." And it further provides that "any of the persons cited to appear on the application for the order of sale may file objections to the confirmation."

Thus it will be seen that the purchasers at such sales are not included among those who may appear and oppose the order of confirmation, as the heirs and devisees are the only persons required by statute to be cited to appear on an application for an order to sell. (Civ. Code, § 1115.) In this case, however, it appears that appellants did appear by attorney in the County Court and object to the confirmation of the sale; but the statute failing to recognize any such right on the part of purchasers, they were there merely by the courtesy of the County Court, and not as a matter of right, consequently could take no appeal from the order of the Court confirming the sale, and they could not appeal from the order of the Court authorizing respondents to make the sale, because they were not parties to the proceeding at that time.

It is therefore ordered that the demurrer interposed to the complaint be overruled, and that this cause be removed to the Court below for further proceedings.