Argued 3 December, 1901; decided 6 January, 1902.

## RUTENIC v. HAMAKAR.

[67 Pac. 192.]

PLEADING JUDGMENT OF COUNTY COURT IN PROBATE.

1. County courts being of general and superior jurisdiction in probate matters, it will be presumed that they had jurisdiction in given probate cases, and therefore their orders therein, when relied on, may be pleaded in general terms as having been made and entered, under Hill's Ann. Laws, § 86.

CONSTRUCTION OF COMPLAINT ON ADMINISTRATOR'S BOND.

2. A complaint in an action on an administrator's bond averring a hearing before the county court in "a suit for an accounting" brought against the defendant, and stating that a decree was rendered therein finding that he had a certain sum in his possession belonging to the estate, is not demurrable on the ground that the county court cannot entertain a suit for an accounting; the accounting alleged not being an equitable accounting, but the accounting required by statute of an adminstrator.

IDEM.

3. A complaint in an action on an administrator's bond which avers that in a suit for an accounting the county court found that he had in his possession a specified sum of money belonging to the estate, which sum he refuses to turn over to the administrator *de bonis non*, in violation of said order, does not declare on the judgment of the county court, but on a breach of the conditions of the bond: *Bailey* v. *Wilson*, 34 Or. 186, applied.

IDEM.

4. A complaint in an action on an administrator's bond which avers that after a hearing the county court found that the administrator had in his possession a specified sum belonging to the estate, which sum he refuses to turn over to the administrator *de bonis non*, "in violation of the order of the said county court," sufficiently avers a breach of the bond by a refusal to comply with an order of the county court, it being inferable therefrom that an order to turn over the money was made.

IDEM.

5. A complaint in an action on an administrator's bond commenced May, 1899, which avers that defendant was removed as administrator in July, 1896, and that at the hearing on the settlement of his accounts in the county court in September, 1896, it was found that he had a specified sum in his possession belonging to the estate, no part of which has been paid to his successor, sufficiently avers defendant's possession of the fund at the commencement of the action; he having secured the money by virtue of his trust.

IDEM.

6. A complaint on an administrator's bond averring that an order of the county court removing the defendant required him on demand to turn over to his successor all property or money belonging to the estate, and that plaintiff duly qualified as his successor, and demanded said funds, but that defendant refuses to deliver the same, sufficiently avers    breach of the condition of the bond, which provided that it should be void in case the administrator faithfully performed his trust; otherwise to remain in force.

PLEADING—EFFECT OF ANSWERING OVER.*

7. A defendant who answers over after a demurrer to a counterclaim set up by him has been sustained waives any error that may have been committed thereby : *Olds* v. *Cary,* 13 Or. 362, followed.

REMOVAL OF ADMINISTRATOR—EFFECT OF ON HIS AUTHORITY.

8. An administrator removed by the county court is thereby divested of all power to pay any claim against the estate, and his act in appropriating funds of the estate to the satisfaction of its indebtedness to him is a nullity.

SET-OFF TO CLAIM DUE AN ESTATE.

9. In an action by an administrator of an insolvent estate to recover a sum claimed by the estate, the defendant cannot set off a claim due from the deceased or his estate, for he would thereby obtain a preference over other creditors—though perhaps the rule may be otherwise when the estate is solvent.

ACCOUNTING BY ADMINISTRATOR—NEED OF CITATION.

10. In probate as in other legal proceedings a voluntary appearance dispenses with the need of a citation—and where an administrator answered a petition for an order requiring him to account, and appeared at the hearing on the petition, but refused to attend afterward, an order settling his accounts is conclusive on him and on his official sureties, for his voluntary appearance conferred jurisdiction.

ACCOUNTING BY ADMINISTRATOR—BASIS OF COMPUTATION.

11. For the purpose of an accounting with an administrator the county court may properly assume the correctness of the last report on file and charge the administrator and his sureties with the money there stated to be on hand : *Herren's Estate,* 40 Or. 90, approved.

PLEADING—EFFECT OF NOT ASKING FULL RELIEF.

12. The failure of a pleader to ask the exact relief or all the relief to which he may be entitled is not preclusive of any relief that the law affords—as, the fact that a complaint does not contain a demand for interest does not preclude the court from awarding interest thereon, if the facts justify it.

From Klamath : HENRY L. BENSON, Judge.

This is an action upon an administrator's bond. The complaint alleges, in effect, that W. H. Mills died about January 22, 1890, leaving an estate in Klamath County, Oregon, upon which letters of administration were issued October 15, 1894, by the county court of said county, to J. W. Hamakar, who on that day filed his bond in the penal sum of $15,000, with his codefendants as sureties, conditioned that, if he should faithfully perform his trust as such administrator according to law, then said obligation to be void, otherwise to remain in full force, which bond was approved by the court; that, as such

*NOTE.—See *Creecy* v. *Joy,* 40 Or. 28, and footnote thereto.—REPORTER.

administrator, Hamakar received from the sale of real prop-
erty belonging to said estate large sums of money; that said
court on July 7, 1896, removed him, revoked his letters, and
ordered him, upon a demand by his successor, to turn over to
the latter all property and money belonging to the estate; that
letters of administration thereon were issued July 20, 1896, by
said court, to John F. Miller, who on that day duly qualified
and became the administrator *de bonis non* of said estate;
"that on the twenty-second day of September, 1896, there was
a hearing before the said county court in a suit for an ac-
counting brought by John F. Miller, as administrator of the
estate of said W. H. Mills, deceased, against said J. W. Hamakar,
former administrator of said estate, at which said hearing said
J. W. Hamakar appeared personally, and upon such account-
ing the said county court found that said J. W. Hamakar had
in his possession the sum of $2,845.59 belonging to the said
estate of W. H. Mills, deceased, which sum of money said Ham-
akar received and came into possession of as administrator
of said estate, and which said sum of money, or any portion
thereof, the said Hamakar has neglected and refused, and still
neglects and refuses, to turn over to said John F. Miller, his
successor in office, in violation of the order of the said county
court;" that Miller, as such administrator, on September 25,
1896, demanded of Hamakar all the money in his possession
belonging to said estate, but he refused and still neglects to
pay him any part thereof; that John Gleim, one of the sureties
on said bond, died about June 15, 1895; and that his estate
was insolvent.  The prayer of the complaint is for a judg-
ment against the defendants, and each of them, for the sum
of $2,845.59, and for the costs and disbursements of the
action.

A demurrer to the complaint on the ground that it did not
state facts sufficient to constitute a cause of action having
been overruled, an answer was filed, a part of which was
stricken out on motion, and a demurrer to another part thereof
sustained, whereupon an amended answer was filed, denying
the material allegations of the complaint, and averring, in

substance, that Hamakar, as said administrator, had made no final or any settlement of his accounts, except the semiannual statement thereof filed April 7, 1896, and acted upon by the court September 22 of that year; that the order set out in the complaint was nothing more than an approval of said account, and determined no matters arising thereafter, and that Hamakar's subsequent acts as such administrator remained unadjudicated, and his accounts unsettled; that at the time Miller was appointed administrator of said estate there remained no property or assets to administer upon; and that at said time all the property remaining of said estate had been sold by Hamakar as administrator, the purchase price thereof received, and paid out as thereinafter alleged. "And, for a second further answer and defense herein, the defendants allege that on the fourteenth day of November, 1891, said estate of W. H. Mills, deceased, was indebted to the defendant J. W. Hamakar in the sum of $2,500, and that on said last-named day said defendant Hamakar duly presented to F. H. Mills, the then administrator of said estate, his claim, duly verified and in all respects according to law, and filed in said county court, and the same was allowed by said administrator; that on the tenth day of August, 1892, there was paid on said claim of said defendant Hamakar the sum of $500; that on the twenty-first day of November, 1894, said defendant Hamakar, as alleged in the complaint, was duly appointed, qualified, and acting administrator of said Mills estate, and on said day filed in said county court his petition for an order of sale of real property belonging to said estate, showing that there were no funds in his hands as such administrator, and that said claim for $2,000 and interest for several years, in favor of said defendant J. W. Hamakar, still remained unpaid, together with several minor claims, aggregating not to exceed $100, which represented the entire indebtedness of said estate, and praying for such order of sale, that funds might thereby be secured to pay said claim; that thereafter such order of sale was made, finding that the allegations of said petition were true, and said petition was granted, and thereunder the realty was sold, and

a confirmation of said sale had in said county court on the eighth day of May, 1895, said order of confirmation reciting the necessity of said sale for the purpose of paying said claim; that thereafter, as alleged in the complaint, on the seventh day of July, 1896, said administrator, Hamakar, was removed by an order of said county court, from which order said defendant Hamakar appealed, which appeal is now pending in the Supreme Court of the State of Oregon; that shortly thereafter, on the fifteenth day of July, 1896, and before the appointment of the plaintiff herein as the successor of J. W. Hamakar, said J. W. Hamakar applied the sums of money received on such sale of realty in payment of said claim so allowed and sanctioned, and in conformity with the plain intent of said orders of the county court for the sale of said realty for such purpose and the order confirming such sale; that said payments accrued to the benefit of said estate in the extinguishment of said claims, that these transactions were in nowise adjudicated in the alleged hearing of September, 1896; that since said time no moneys have come into his possession or control belonging to said estate, and he is in nowise indebted thereto.''

A demurrer to said second separate answer on the ground that it did not state facts sufficient to constitute a defense to the action having been sustained, a reply was filed denying the remaining allegations of new matter in the answer, whereupon a trial was had without the intervention of a jury, and from the evidence taken the court found the facts, in substance, as stated in the complaint, and, as a conclusion of law therefrom, that Miller was entitled to recover from the defendants said sum of $2,845.59, with interest at the rate of six per cent. per annum from September 24, 1896, amounting to $3,257.69, and, having given judgment therefor, the defendants appeal. After the appeal was perfected, Miller died, and J. C. Rutenic, who had been appointed by the county court of Klamath County administrator *de bonis non* of the estate of W. H. Mills, deceased, was upon motion, substituted as plaintiff herein.                                   AFFIRMED.

For appellants there was a brief over the names of *J. C. Rutenic,*\* with an oral argument by *Messrs. J. W. Hamakar, in pro. per.,* and *J. A. Jeffrey* and *Geo. G. Bingham.*

For respondent there was a brief over the names of *John S. Orr, Chas. A. Cogswell* and *Geo. S. Nickerson,* with an oral argument by *Mr. Cogswell* and *Messrs. Maxwell & Hayden.*

MR. JUSTICE MOORE, after stating the facts in the foregoing language, delivered the opinion of the court.

1. It is contended by defendants' counsel that the complaint does not state facts sufficient to constitute a cause of action, and that such defect was not waived by answering over after a demurrer interposed on that ground had been overruled. It is argued that the allegation of Hamakar's removal is insufficient, because it does not aver that the county court had jurisdiction of the subject-matter or of the person of the administrator whose letters are claimed to have been revoked. The allegation thus challenged is as follows: "That on the seventh day of July, 1896, the said county court made and entered a certain order or decree removing said J. W. Hamakar as administrator of the estate of said W. H. Mills, deceased, revoking his letters of administration, and further ordering and decreeing that said J. W. Hamakar, administrator as aforesaid, shall, upon demand from his successor in office, turn over to him all property and moneys belonging to said estate." The statute, in prescribing the manner of alleging a decision of an inferior tribunal, provides that, "in pleading a judgment or other determination of a court or officer of special jurisdiction, it shall not be necessary to state the facts conferring jurisdiction, but such judgment or determination may be stated to have been duly given or made": Hill's Ann.

\*NOTE.—In explanation of the fact that by the record Mr. Rutenic appears to have filed a brief against himself, it should be stated that he filed the brief on behalf of the administrator and his sureties before the death of John F. Miller, the original plaintiff herein. On the final hearing Miller's attorneys represented Rutenic, and other attorneys appeared for Hamakar.—REPORTER.

Laws, § 86. Notwithstanding this provision of the statute, it has been held that, in pleading the judgment of an inferior tribunal, the facts conferring jurisdiction must be alleged: *Dick* v. *Wilson,* 10 Or. 490; *Page* v. *Smith,* 13 Or. 410 (10 Pac. 833); *Fisher* v. *Kelly,* 30 Or. 1 (46 Pac. 146). This rule is evidently based upon the ground that no presumption will be indulged in favor of the jurisdiction of a court of inferior or limited power; thereby rendering it necessary, in alleging the judgment of such a court, to set forth in a pleading all the facts requisite to show that jurisdiction of the subject-matter had been conferred by a grant of sovereign power, and of the person in the manner prescribed by law: *Willits* v. *Walter,* 32 Or. 411 (52 Pac. 24). In a judgment rendered by a court of general and superior jurisdiction, however, every fact necessary to confer jurisdiction will be presumed in order to support the validity of the judgment: *Bruckman* v. *Taussig,* 7 Colo. 561 (5 Pac. 152); *Pennington* v. *Gibson,* 59 U. S. (16 How.) 65; *Springsteene* v. *Gillett,* 30 Hun, 260; *Spaulding* v. *Baldwin,* 31 Ind. 376; *Hansford* v. *Van Auken,* 79 Ind. 302; *Lathrop* v. *Stuart,* 5 McLean, 167 (Fed. Cas. No. 8,113); *Holmes* v. *Campbell,* 12 Minn. 221; *Rogers* v. *Odell,* 39 N. H. 452; *Wilbur* v. *Abbot,* 58 N. H. 272. The county court, in probate matters, is a court of general and superior jurisdiction [*Tustin* v. *Gaunt,* 4 Or. 305; *Farley* v. *Parker,* 6 Or. 105 (25 Am. Rep. 504); *Monastes* v. *Catlin,* 6 Or. 119]; and, as it is unnecessary to allege a fact which the law will presume [Bliss, Code Pl. (3 ed.) § 175; Boone, Code Pl. § 11; Chit. Pl. *221], the plaintiff was not required to allege that said court had secured jurisdiction of the person and subject-matter, so that the complaint is not vulnerable to the objection that it does not state facts sufficient to constitute a cause of action, notwithstanding it failed to allege that the order removing the administrator was "duly" given or made; such qualifying word being required only in pleading the determination of a court or officer of special jurisdiction: Hill's Ann. Laws, § 86.

2. It is insisted that the county court is without authority to entertain a suit for an accounting; that the personal ap-

pearance of Hamakar therein as alleged in the complaint did not confer upon it jurisdiction of the subject-matter, and hence the complaint fails to state facts sufficient to constitute a cause of action.  It is the duty of every executor or administrator, in April and October of each year, until the administration is completed and he is discharged from his trust to render an account, verified by his oath, and file the same with the clerk, showing the amount of money received and expended by him, etc.: Hill's Ann. Laws, § 1170, as amended February 25, 1895 (Laws, 1895, p. 89).  If he fails to comply with this requirement, he may be cited to appear before the county court and ordered to file an account; and if he neglect to appear when cited, or to file the account as required, he may be punished for a contempt: Hill's Ann. Laws, § 1171.  The county court is a court of record, having general jurisdiction to be defined, limited, and regulated by law: Const. Or. Art. VII, § 12.  Such court has exclusive original jurisdiction to direct and control the conduct and to settle the accounts of executors, administrators, and guardians: Hill's Ann. Laws, §. 895, subd. 3.  The mode of proceeding in the administration of estates is in the nature of a suit in equity, as distinguished from an action at law; the county court exercising its power by means of a citation to the party, and securing jurisdiction of the subject-matter by means of a verified petition, enforcing its determination by orders and decrees: Hill's Ann. Laws, § 1078, subds. 1, 2, 4; *Wright* v. *Edwards,* 10 Or. 298, 301; *Plunkett's Estate,* 33 Or. 414 (54 Pac. 152).  The county court is not, in the strict sense of the term, a court of equity, even in probate matters [*Richardson's Guardianship,* 39 Or. 246 (64 Pac. 390)] ; but the proceedings therein in the administration of estates are so analogous thereto that the defendant must have understood what was intended by the averment in the complaint that, on the hearing in a suit for an accounting brought by Miller against him, the county court found that he had in his possession the sum of $2,845.59 belonging to said estate.  If the allegation were not so understood, the remedy

was by motion to make the complaint more definite and certain.

3. It is maintained that, if Miller's right is based on the alleged judgment of the county court, the complaint fails to state facts sufficient to constitute a cause of action, because it does not aver that the judgment has not been paid, or that it is still in force and effect, and that, if the right is founded on an alleged breach of the condition of the bond, the complaint is subject to the same objection, because it does not aver that the principal has in his possession any property or money belonging to said estate. In *Bailey* v. *Wilson,* 34 Or. 186 (55 Pac. 973), it was held that a complaint upon an insurance agent's bond, alleging that the principal had received various sums which he had failed to pay over, and that upon an accounting and settlement with reference thereto a specified sum was ascertained and determined to be due, which the principal promised and agreed to pay, does not declare upon an account stated, but upon a claim for damages resulting from a breach of the bond. The rule thus announced must control this case, which is not an action on a judgment, but on an alleged breach of the conditions of a bond.

4. The complaint alleges that the county court having found that Hamakar had in his possession the sum of $2,845.59, Miller on September 25, 1896, demanded of him all the money in his possession belonging to said estate, but he refused to comply therewith, and still neglects to pay over to him any part thereof, in violation of the order of said court. In *Judge of Probate* v. *Couch,* 59 N. H. 39, it was held that, to maintain an action on a probate bond, it was necessary to aver and prove a breach of the bond, by a neglect or refusal to comply with the order of the probate court to account. The complaint in the case at bar does not allege that Hamakar was required by order of the county court to pay to Miller said sum of money; but, it having averred that his refusal to do so violated the order of said court, it is reasonably inferable from the complaint that such order was made.

5. It is maintained that the complaint fails to state facts

sufficient to constitute a cause of action, because it does not allege that at the commencement of this action either of the defendants had in his possession or under his control any property or money belonging to the estate of W. H. Mills, deceased. This action having been commenced May 19, 1899, it is alleged in the complaint that Hamakar was removed as administrator July 7, 1896, and that at the hearing in the county court September 22, 1896, it was found that he had in his possession the sum of $2,845.59, no part of which had been paid over to Miller as his successor. Hamakar secured this money by virtue of his trust, in view of which we think the complaint shows that it was in his possession at the time this action was instituted.

6. It is also contended that the complaint fails to state facts sufficient to constitute a cause of action, because it does not clearly allege a breach of the bond. The conditions of that obligation are that it should be void if Hamakar faithfully performed his trust as administrator according to law. The county court having removed him as administrator, his authority to act for the estate was withdrawn: *Knight* v. *Hamaker*, 33 Or. 154 (54 Pac. 277, 659). The power to remove an executor or administrator conferred by the statute (Hill's Ann. Laws, § 1094), necessarily carries with it, as an incident thereof, the authority to require him to render an account, and to pay over all moneys in his hands and to deliver all property in his possession belonging to the estate to his successor; and any failure to comply therewith is a violation of the provisions of law, and a breach of the conditions of his bond. The complaint alleges that the order removing Hamakar required him, upon demand, to turn over to his successor all property and moneys belonging to said estate; that Miller was appointed as such successor, and, having duly qualified as administrator, he demanded of Hamakar all the money in his possession belonging to said estate, but he refused and still neglects to pay any part thereof. This sufficiently alleges a breach of the condition of the bond, and shows that the complaint states facts sufficient to constitute a cause of action.

7. It is contended that in an action on a bond, to recover damages for a breach thereof, the principal and sureties may interpose as a defense thereto a counterclaim in favor of the principal, and hence the court erred in sustaining a demurrer to the third separate defense in the original answer, setting up a counterclaim. Whatever the rule of law may be in respect to the defense insisted upon, it can have no application to this case, for the defendants, having answered over after the demurrer was sustained, waived any error that may have been committed thereby: *Wells* v. *Applegate,* 12 Or. 208 (6 Pac. 770); *Olds* v. *Cary,* 13 Or. 362 (10 Pac. 786).

8. It is maintained that the court erred in sustaining a demurrer to the second separate defense in the amended answer. It will be remembered that it was there alleged that Hamakar's claim of $2,500 against said estate having been allowed, upon which he was paid the sum of $500, he was thereafter appointed administrator, and secured an order to sell the real property of the estate, upon his petition therefor, showing that it was indebted to him in said sum, with interest, and also owed several minor demands, not exceeding $100, which represented the entire indebtedness of the estate, in pursuance of which he sold said property and the sale was confirmed; that on July 7, 1896, he was removed as administrator, and eight days thereafter applied the money received on account of said sale in payment of his claim, in the extinguishment of which the estate was benefited; that such application of the money was not credited to him, nor was the payment thereof adjudicated in the alleged settlement made by the county court September 22, 1896; and that since said sale no money has come into his hands belonging to said estate, nor is he indebted thereto. It will be seen by these averments that Hamakar, after his removal, applied the money arising from said sale to the payment of his own claim, and did not pay any other claims. He alleges that he is not indebted to the estate, though the money received from said sale, as will hereinafter be shown, was more than sufficient to satisfy his claim against the estate. When his letters of administration were revoked,

his authority to act for the estate terminated, and he was divested of all power to pay any claim against it. When he was appointed administrator he became the agent of the county court for the purpose of executing the trust reposed in him, thereby making it obligatory on him to obey all its lawful orders made in administering the estate. His authority being thus dependent upon the sanction of the county court, it follows that when he was removed, and his letters revoked, his power ceased, and any act thereafter performed by him in attempting to administer upon the estate was an absolute nullity: *Levy* v. *Riley,* 4 Or. 392.

9. If it be assumed that the averments of new matter in the amended answer, to which the demurrer was directed, and which, in substance, had been averred in the original answer as a counterclaim, can be treated as constituting a defense, we do not think the allegations are sufficient for that purpose. A part of the amended answer, not challenged by the demurrer, contained the following concession: ''But admit that said Hamakar refuses and neglects to pay over to said John F. Miller, administrator as aforesaid, and plaintiff herein, said sum of $2,845.59, or any part thereof.'' This admission may be regarded as a correct statement of the sum received by Hamakar on account of the sale of the real property belonging to the estate. The interest on $2,500 at eight per cent. from November 14, 1891, when Hamakar's claim for that sum was allowed, to August 10, 1892, when he was paid $500, is the sum of $147.77, which added to the principal, makes $2,647.77, and, subtracting the payment, leaves $2,147.77. The interest on the new principal, at the same rate, from the date of such payment to July 15, 1896, when it is alleged that Hamakar applied the money in his hands to the payment of his claim, is $675.75, and the amount then due him was $2,823.02, after paying which from the money received from the sale of the land he had remaining only $22.57, not including any sum on account of the expenses incurred in the administration of the estate; thus showing that the estate was insolvent, and Hamakar not entitled, in any event, to the payment of his claim

in full. · In an action by an executor or administrator of a
solvent estate, it has been held that the defendant may set off
any claim that he may have had against the testator or in-
testate: *Hicks* v. *National Bank of N. L.* 168 Pa. St. 638 (32
Atl. 63); *Steinmeyer* v. *Ewalt St. Bridge Co.* 189 Pa. St. 145
(42 Atl. 132). Such a rule cannot be invoked in case of an
insolvent estate, however, for to permit it to have that effect
would disturb the ratable distribution of the fund arising
from the sale of the decedent's property to which each of his
creditors is entitled. For these reasons no error was com-
mitted in sustaining the demurrer.

10. It is contended that the court erred in admitting in evi-
dence a transcript of the alleged decree of the county court
settling Hamakar's account, and finding that he had in his
possession the sum of $2,845.59, belonging to said estate, which
he refused to turn over to his successor. It is argued that in
a suit on an administrator's bond no recovery can be had
unless it is shown that the administrator was cited to render
an account; citing *Nelson* v. *Jaques,* 1 Me. 139; *Court of Pro-
bate* v. *Eddy,* 8 R. I. 339. The decree in question recites that
Hamakar filed an answer to Miller's petition for an order re-
quiring him to account, appeared in person in open court at
the hearing thereon, but declined further to attend the trial,
whereupon the court, having taken testimony, made the find-
ing of which the appellants complain. The object of a citation
in probate proceedings is to secure the attendance of parties,
but, if this is accomplished by a voluntary appearance, the
object of the statute is fully subserved. In *Adams* v. *Petrain,*
11 Or. 304 (3 Pac. 163), it was held that no action can be
maintained on an administrator's bond until after the settle-
ment of his accounts in the county court, and such is the effect
of the decision to which our attention has been called: *Gilbert*
v. *Duncan,* 65 Me. 469. Hamakar having declined to take any
part in the examination of his accounts, it was the duty of
the court to ascertain the condition thereof as best it could.

11. For the purpose of this duty his report filed April 7,
1896, showing that he had in his possession on that day money

belonging to the estate in the sum of $2,845.59, formed the basis of the court's finding. In *Herren's Estate,* 40 Or. 90 (66 Pac. 688) — a proceeding by an administrator *de bonis non* against the representative and sureties of a deceased administrator to compel an accounting, — it appeared from the last report of the prior administrator that he had in his hands a given sum of money; and it was held that the burden of proof was on the defendants to show the proper administration of such fund, and that the court's finding thereon furnished *prima facie* evidence against the sureties as to the correctness thereof. To the same effect is *Bellinger* v. *Thompson,* 26 Or. 320, 347 (37 Pac. 714, 40 Pac. 229), and *Thompson* v. *Dekum,* 32 Or. 506 (52 Pac. 517, 755).

12. The prayer for judgment did not include a demand for interest, but the court awarded therefor the sum of $412.10, and it is claimed that error was thereby committed. "The failure to ask relief to which it is apparent the party is entitled," say the editors of the Encyclopedia of Pleading and Practice (Vol. XVI, p. 795*b*), "will not, as a general rule, have the effect to deprive him of the relief to which he is entitled in fact; and especially is this so where the defendant has appeared and answered." In *Carpenter* v. *Sheldon,* 22 Ind. 259, the complaint prayed judgment for the sum due at the first term of the court after the suit was instituted, but the judgment was not rendered until a subsequent term, and then given for the sum originally demanded, with accrued interest; and it was held that the complaint would be deemed amended so as to demand judgment for the sum awarded. Hamakar having retained this money, which came into his hands by virtue of his trust, the estate was entitled to interest thereon; and the defendants having answered the complaint, the court was authorized to give judgment for the interest: *Jones* v. *Butler,* 30 Barb. 641; *Hopkins* v. *Lane,* 2 Hun. 38; *Marquat* v. *Marquat,* 12 N. Y. 336.

Other errors are assigned, but, not deeming them important, the judgment is affirmed.                              AFFIRMED.